**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CRIMINAL ACTION NO. 5:25-CR-00135-GFVT-EBA**

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**V.**                               **BINDING PLEA AGREEMENT**

**GREGORY SCOTT RICHARDSON**                               **DEFENDANT**

\*    \*    \*    \*    \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant, Gregory Scott Richardson, will enter a guilty plea to Count 1 of the Indictment, charging possession with intent to distribute 40 grams or more of a mixture or substance containing a detectable amount of fentanyl and 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1). The Defendant also agrees to forfeiture of the items set forth in the forfeiture allegation.  Pursuant to Rule 11(c)(1)(C), the United States and the Defendant agree to a specific sentence of 180 months. Pursuant to Rule 11(c)(4), if the Court accepts this plea agreement, the agreed disposition will be included in the judgment. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Count 2 of the Indictment.

1

2. The essential elements of Count 1 are as follows:

(a) First, that the Defendant knowingly or intentionally possessed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and a mixture or substance containing a detectable amount of methamphetamine, also a Schedule II controlled substance.

(b) Second, that the Defendant intended to distribute the mixtures or substances containing a detectable amount of fentanyl and methamphetamine to another person.

(c) The amount of controlled substances possessed by the Defendant was at least 40 grams of fentanyl and at least 50 grams of methamphetamine.

3. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) On June 21, 2023, Kentucky State Police officers traveled to Sub Station Road in Estill County, in the Eastern District of Kentucky, to attempt to locate and arrest RICHARDSON for an outstanding state warrant. They proceeded to a residence owned by RICHARDSON's mother. From outside the home, officers could see RICHARDSON inside the home, and they proceeded inside to arrest him. While inside the residence, officers saw a suspected controlled substance in a clear bag on the couch next to RICHARDSON. The substance appeared to be fentanyl or heroin. Officers also saw, in plain view, drug paraphernalia and a clear bottle with suspected drug residue on the kitchen table.

(b) Officers then *Mirandized* RICHARDSON. He advised that he was "not going to make their jobs any harder" and admitted that the drugs belonged to him. RICHARDSON consented to a search of the home, but officers also obtained a state search warrant. Officers seized a total of 107 grams believed to contain fentanyl and/or heroin, 67 grams of methamphetamine, approximately 900 Xanax tablets, 80 gabapentin, 31 suboxone pills, 17 suboxone strips, approximately 1 pound of marijuana, and $11,355 in cash that was drug proceeds. Testing

2

conducted by the Kentucky State Police Laboratory determined that Item 1.1 was 76.1 grams containing a mixture of fentanyl, a Schedule II controlled substance, and heroin, a Schedule I controlled substance[1]. Item 5 was 67.280 grams of a colorless crystalline solid found to contain methamphetamine, a Schedule II controlled substance. RICHARDSON was arrested for state offenses but was released on bond.

(c) On November 25, 2023, KSP officers were investigating a theft complaint and proceeded, once again, to Sub Station Road in Estill County, where RICHARDSON was living. Officers saw RICHARDSON inside the home and saw a large bag of suspected marijuana. Officers directed RICHARDSON and the other occupants to exit the home. Officers then obtained a search warrant. Seized from the search of the home was approximately 40 grams of suspected heroin/fentanyl, less than 5 grams of methamphetamine, 4 digital scales, and other drug paraphernalia. Testing by the KSP Laboratory proved that Item 1 was 42.9 grams of a gray powder which contained fentanyl, a Schedule II controlled substance. Items 2.1 and 2.2 were found to contain methamphetamine, a Schedule II controlled substance, with a net weight totaling 2.962 grams.

(d) RICHARDSON admits that he possessed fentanyl and methamphetamine with the intent to distribute those drugs to another. As to an applicable relevant drug quantity, RICHARDSON admits that the drug quantity attributable to him by his own conduct is 437 kilograms of converted drug weight.

4. The enhanced statutory punishment for Count 1 is imprisonment of not less than 10 years nor more than life imprisonment, a fine of not more than $8,000,000, and a term of supervised release of not less than 8 years. A mandatory special assessment of $100 applies, and the Defendant will pay this $100 assessment to the U.S. District Court Clerk at the time of the sentencing hearing. RICHARDSON agrees that he is subject to these

---

[1] Item 1.2 was three (3) knotted plastic bags each containing a tan powder/solid having a gross weight of approximately 31 grams. The substances were similar in appearance to Item 1.1, found to contain a mixture of heroin and fentanyl. However, Item 2.2 was not tested by the KSP Laboratory.

3

enhanced statutory penalties by virtue of his conviction for a serious drug felony offense as set forth in the notice filed by the United States pursuant to 21 U.S.C. § 851. *See* DE # 16: Notice of Prior Conviction. RICHARDSON admits that he was previously convicted of Conspiracy to Traffic in a Controlled Substance in the First Degree, Second or Greater Offense, in Bourbon Circuit Court Case Number 12-CR-144. RICHARDSON admits that he served more than 12 months of imprisonment for this prior offense and that he was released from any term of imprisonment related to this offense within 15 years of the commencement of the instant offense.

5. The United States and the Defendant agree to the following sentencing guidelines calculations and specific sentence, which binds the Court upon acceptance of this plea agreement:

(a) The United States Sentencing Guidelines (U.S.S.G.) Manual in effect at the time of sentencing will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all the facts set forth in paragraph three and the provided discovery materials.

(c) Pursuant to U.S.S.G. § 4B1.1(b)(1), the base offense level is 37 because the Defendant qualifies for sentencing as a career offender with a statutory maximum punishment of life imprisonment.

(d) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

4

(e) The Defendant's sentence of imprisonment shall be 180 months. The Defendant's term of supervised release shall be 8 years.

(f) Pursuant to U.S.S.G. § 5E1.1, there is no restitution.

6. The Defendant's criminal history category is VI pursuant to U.S.S.G. 4B1.1(b).

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2.

8. The Defendant waives the right to appeal the guilty plea, conviction and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense to which he is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees to take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including, but not limited to, executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw,

5

and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture herein, he consents to the forfeiture of any other property of his up to the amount of the value of the assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

10. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

11. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or

6

indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional

7

level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12.    The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

8

13. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

14. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

JASON D. PARMAN
FIRST ASSISTANT UNITED STATES ATTORNEY

Date: 6/16/26   By: _____
G. Todd Bradbury
Assistant United States Attorney

Date: June 15TH 26   By: _____
Gregory Scott Richardson
Defendant

Date: 6/15/26   By: _____
Kathryn A. Walton
Attorney for Defendant

9